**UNITED STATES, Appellee,**

v.

**Sergeant Daniel M. ECK, 086–58–5314, United States Army, Appellant.**

**ACMR 8702817.**

U.S. Army Court of Military Review.

23 Aug. 1989.

For Appellant: Major Eric T. Franzen, JAGC, Captain Jon W. Stentz, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Daniel J. Dell'Orto, JAGC, Captain James K. Reed, JAGC (on brief).

Before KUCERA, CARMICHAEL, and GIUNTINI, Appellate Military Judges.

OPINION OF THE COURT

CARMICHAEL, Judge:

Sergeant (SGT) Eck was tried by a general court-martial consisting of officer and enlisted members. He was acquitted of both kidnapping and forcible sodomy but, contrary to his pleas, was convicted of rape. The members sentenced him to a

dishonorable discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to Private E1. The convening authority approved the sentence as adjudged.

Eck now contends that the military judge committed prejudicial error by not, *sua sponte*, instructing the members on mistake of fact as a defense to rape. We disagree.

If ever a case strikingly framed but one issue, that of consent, it is the case before us. The complainant, Mrs. I., testified that she was leaving the Back Stage Club, where she worked as a topless dancer, when she was called over to a small pickup truck by two men sitting in the cab. She recognized the two as customers she had sat and talked with earlier that evening in the club. Mrs. I. did not feel threatened because the men were not loud or boisterous. They attempted to persuade her to take a ride with them in the truck, but she refused. Mrs. I. then was grabbed by the accused, SGT Eck, and pulled into the truck involuntarily. She struggled to free herself but could not do so. She was driven a short distance and raped by Eck with the aid of the driver, Specialist (SPC) Crace, who held her arms. Mrs. I. was emphatic that she not only repeatedly told SGT Eck that she did not want to have sexual intercourse with him, but did everything possible to fight him off. She testified that prior to raping her, SGT Eck made a threat about leaving her in a ditch by the side of the road. After the rape, the two soldiers drove her back to her car. She was crying and the accused asked her two questions—was she crying and had he raped her. Mrs. I. answered no to both questions because she was frightened of Eck.

Sergeant Eck's account was essentially a point-by-point refutation of Mrs. I.'s testimony that she was raped. Sergeant Eck testified that he and his friend, SPC Crace, had gone to the Back Stage Club where they first saw Mrs. I., who was performing as a topless dancer. They spoke with Mrs. I. about sex involving two men and one woman and she seemed interested. However, no arrangements for a later meeting

were made and Eck and Crace left the club. By coincidence, they were in Crace's truck outside the club when Mrs. I. came out. Crace yelled to her that he thought she did not get off work until later. Neither Eck nor Crace asked Mrs. I. to come over to the truck. Mrs. I. went to her car first and then, without being asked, walked over to the truck. Eck and Crace invited her to go for a ride and she agreed, voluntarily getting into the truck. They drove a short distance to a private driveway and the two men started kissing Mrs. I. simultaneously. This foreplay culminated in her voluntary participation in sexual intercourse with SGT Eck. She pushed her shorts and panties down and helped SGT Eck remove his pants prior to intercourse. After the act of sexual intercourse was over, Mrs. I. gave Eck a cigarette and smoked one herself. She, Eck and Crace decided to return to the club parking lot where Mrs. I.'s car was located. They joked together on the return trip and the two men let Mrs. I. out by her car. Sergeant Eck testified that Mrs. I. definitely consented to sexual intercourse with him.

Mrs. I.'s testimony was corroborated by her appearance and emotional state after her return to the parking lot. She was crying, vomiting, and visibly shaking. Sergeant Eck's testimony was corroborated by the medical findings. Mrs. I. had only one bruise and one superficial scratch on her forearm. Her clothing was not torn or otherwise marked. A pelvic examination showed no physical trauma. Specialist Crace did not testify, apparently because he was eminently impeachable by both the prosecution and the defense.

■ The credibility of both SGT Eck and Mrs. I. was called into question on the merits, and counsel made it clear to the members that there was no middle ground—one of the two protagonists was testifying truthfully and the other was not. Sergeant Eck testified that Mrs. I. aggressively manifested consent to sexual intercourse; Mrs. I. testified that she objectively manifested non-consent. By either account, the outward manifestation of consent or non-consent was unmistakable.

Appellate defense counsel highlight certain facts which they contend raised the mistake of fact defense and thus required an instruction.[1] In our view, their contention is without merit.

On the contrary, considering the posture of the evidence and the defense theory of the case, we believe the military judge would have erred had he gratuitously instructed on mistake of fact. Such an instruction would have directly undermined Sergeant Eck's testimony that Mrs. I. definitely consented to sexual intercourse. Further, it would have diverted the members' attention from the consent issue to a defense neither raised by the facts nor developed or argued by trial defense counsel.

Relying on the United States Court of Military Appeals' decision in *United States v. Carr*, 18 M.J. 297 (C.M.A.1984), we hold that the defense of mistake of fact was not reasonably raised in the instant case. There is no evidence of record that appellant received a "mixed message" of consent and non-consent, and that he believed the consent portion of the message. Appellant's testimony, *ipso facto*, unequivocally indicates that Mrs. I. did in fact consent to sexual intercourse. Consequently, we are satisfied from our reading of the record that counsel at the trial level and the military judge were correct—the only issue with respect to the offense of rape was consent.[2] *See also United States v. Taylor*, 26 M.J. 127, 130–31 (C.M.A.1988) (defense counsel did not overlook the affirmative defense of mistake of fact, but recognized that it was not reasonably raised by the evidence).

■ Although not raised as error by appellate defense counsel, the military judge instructed the members on findings that "If a woman fails to make the lack of consent [to sexual intercourse] reasonably known, by taking such measures of resistance as are called for by the circumstances, the inference may be drawn that she did *not* consent" (emphasis added). This is an obvious error; the proper instruction is that under such circumstances an inference may be drawn that the alleged victim *did* consent. However, viewing this instructional error within the context of the military judge's entire explanation to the members of consent, we find SGT Eck was not prejudiced. *See* Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

We have considered SGT Eck's numerous personal challenges to the sufficiency of the evidence, the correctness of the military judge's evidentiary rulings, trial counsel's reference to him as a felon, and trial counsel's impeachment of him by showing that his sworn statement in his reenlistment contract as to having no prior arrests was untrue. These issues are without merit. We find Sergeant Eck was afforded a fundamentally fair trial that was free of prejudicial error.

The findings of guilty and the sentence are affirmed.

Senior Judge KUCERA and Judge GIUNTINI concur.

---

1. Appellate defense counsel erroneously state, as one of the facts requiring a mistake of fact instruction, that vaginal smears taken from Mrs. I. showed no spermatazoa present. The smears in fact showed that spermatazoa was present. This finding is consistent with the testimony of both Mrs. I. and SGT Eck that sexual intercourse between them did occur.

2. The outcome of this case hinged solely on the court members' assessment of credibility. Despite SGT Eck's account of consensual sexual intercourse, the members were convinced beyond a reasonable doubt that Eck raped Mrs. I. As Judge Cox observed in *United States v. Gamble*, 27 M.J. 298, 311 (C.M.A.1988) (concurring in part and dissenting in part), the members are in a superb position to judge the credibility of the protagonists. Whether the members rejected portions of Mrs. I.'s testimony as unworthy of belief in acquitting SGT Eck of both kidnapping and forcible sodomy, we have no way of knowing.