**UNITED STATES**

v.

**Staff Sergeant Darrick J. EVERETT,
FR269–64–4887, United States Air
Force.**

**ACM 30158.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 8 May 1992.

Decided 10 March 1994.

 

home on Beale Air Force Base, to celebrate Christmas and the anniversary of two friends. Appellant was an invited guest. Considerable amounts of alcohol were consumed by appellant, GM, and most of the others in attendance. GM became depressed, apparently due to the absence of her husband, and went to her bedroom. Friends coaxed her out to participate in the cutting of the anniversary cake. Later, she returned to her bedroom, and the party began to break up. Appellant, MB, and PB remained behind to clean up. Eventually, appellant ushered MB and PB out of the quarters, telling them he would turn out the lights and lock up.

GM was awakened at 1100 the following morning by her husband's telephone call. While she was talking on the phone she remembered appellant standing by the foot of the bed during the night, her asking him what was going on, and him telling her to go back to sleep. After finishing the phone conversation with her husband, GM noticed her thighs were sticky with what appeared to be semen and there was "a bad smell in the room.... It smelled like sex but it was just worse." She had no memory of having had sexual intercourse. There was a message on her telephone answering machine from appellant's wife who was upset. With the assistance of friends, she was taken to the base hospital. She did not have any visible signs of injury on her body. Tests later confirmed the presence of semen in her vagina and could not eliminate appellant as the source of the semen.

Appellant provided two signed, sworn statements to special agents of the Air Force Office of Special Investigations (AFOSI) in which he admitted engaging in sexual intercourse with, and having fellatio performed upon him by, GM. In the second statement, appellant concedes that, although GM may have known she was engaging in sex acts, he believed she did not know it was with him.

Appellate Counsel for the Appellant: Captain Robert I. Smith (argued), Colonel Terry J. Woodhouse, Lieutenant Colonel Jay L. Cohen, Lieutenant Colonel Frank J. Spinner, Major Mary C. Yastishock, and Captain David D. Jividen.

Appellate Counsel for the United States: Captain Timothy G. Buxton (argued), Colonel Jeffery T. Infelise.

Before SNYDER, RAICHLE, and YOUNG, Appellate Military Judges.

## OPINION OF THE COURT

YOUNG, Judge:

Contrary to his pleas, appellant was convicted of rape and forcible sodomy. Article 120 (10 U.S.C. § 920 (1988)) and Article 125 (10 U.S.C. § 925 (1988)), UCMJ. Court members sentenced him to a dishonorable discharge, confinement for 6 months, and reduction to E–1. Appellant asserts that the military judge erred in failing to suppress his confession to sodomy because it lacked corroboration, improperly limited his cross-examination of the alleged victim, and made four instructional errors on findings. We find prejudicial error in the instructions and set aside the convictions. We were assisted in deciding these issues by the able and focused arguments of appellate counsel for both parties.

### I. Facts

On the evening of 21 December 1991, GM, the wife of a military member serving temporary duty in Honduras, hosted a party, at her

### II. Cross–Examination of the Alleged Victim

During appellant's cross-examination of GM, the trial counsel objected to defense questions about GM's relationship with her husband. At the ensuing Article 39(a) session, the defense counsel asked the military

judge to permit him to question GM about her husband's infidelity and his physical abuse of her. Appellant claimed GM had a motive to lie about the consensual nature of her sexual conduct with appellant: (1) her husband's infidelity gave GM reason to have consensual sex with someone else; (2) GM realized appellant's wife knew of her sexual conduct with appellant and was upset enough to leave a message on GM's answering machine; (3) because appellant's wife was so upset, GM thought her husband might learn of her infidelity with appellant; and (4) based on her husband's previous conduct, GM feared being physically abused by him if he discovered she had consensual sex with appellant. The military judge sustained the trial counsel's objection. He held that the defense could inquire "if there were problems within the marriage," and whether she had sought "marital counseling," but refused to allow questions concerning "specific acts of conduct by [GM's] husband."

■ A military judge retains wide discretion in imposing reasonable limits on the scope of cross-examination, especially where such limitations prevent " 'harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' " *United States v. Bahr,* 33 M.J. 228, 232 (C.M.A.1991) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 678–679, 106 S.Ct. 1431, 1434–35, 89 L.Ed.2d 674 (1986)). However, the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination under the sixth amendment. *Bahr,* 33 M.J. at 232 (citing *Van Arsdall* and *Davis v. Alaska,* 415 U.S. 308, 316–317, 94 S.Ct. 1105, 1110–11, 39 L.Ed.2d 347 (1974)). "Bias, prejudice, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by evidence otherwise adduced." Mil.R.Evid. 608(c).

■ Although GM claimed to have no memory of the sexual intercourse and the sodomy, her credibility was still an issue for the court members to decide. Limiting the defense to showing that GM had marital problems and sought marital counseling unduly restricted appellant's ability to show

that GM might have some reason to falsify her testimony. Seeking counseling for marital difficulties is not much of a motive to engage in an extramarital sexual liaison and then misrepresent it as rape. Engaging in consensual sex with another because of the infidelity of her spouse, and claiming the sex was nonconsensual for fear that her physically abusive spouse would discover her infidelity, would present a much stronger motive. We find that appellant should have been permitted to attempt to establish his defense, and restricting his cross-examination of GM was error.

■ "[T]he constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to *Chapman [v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) ] harmless-error analysis." *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. Determining whether the error was harmless beyond a reasonable doubt depends upon a host of factors which include "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

GM's testimony was not crucial or central to the prosecution's case. *See Olden v. Kentucky,* 488 U.S. 227, 233, 109 S.Ct. 480, 484, 102 L.Ed.2d 513 (1988). It was used mainly to corroborate the accused's confession of 27 December. The prosecution based its case primarily on appellant's lawfully obtained confession. An accused's confession is " 'probably the most probative and damaging evidence that can be admitted against him,' *Cruz v. New York,* 481 U.S. 186, 195, 107 S.Ct. 1714, 1720, 95 L.Ed.2d 162 (1987) (White, J., dissenting), so damaging that a jury should not be expected to ignore it even if told to do so, *Bruton v. United States,* 391 U.S. 123, 140, 88 S.Ct. 1620, 1630, 20 L.Ed.2d 476 (1968) (White, J., dissenting). . . ." *Arizona v. Fulminante,* 499 U.S. 279, 292, 111 S.Ct. 1246, 1255, 113 L.Ed.2d 302 (1991). Based on the circumstances of this case, we

find this error to be harmless beyond a reasonable doubt.

### III. The Military Judge's Instructions

Appellant asserts the military judge erred in instructing the court members on findings: (1) he failed to instruct that in order to equate mental or physical incapacity with force and lack of consent, the court members had to find appellant had knowledge of the incapacity; (2) he failed to instruct on mistake of fact; (3) he refused to instruct that the members could consider evidence of lack of voluntariness of appellant's confession in determining what weight to give it; and (4) he refused to instruct the court members to consider the amount and type of corroborating evidence in determining what weight to give to appellant's confession. As an evaluation of the corroborating evidence is part of the instruction on voluntariness, we will consider (3) and (4) together.

#### A. The Mental and Physical Incapacity Instruction

■ Citing *United States v. Baran*, 22 M.J. 265 (C.M.A.1986) and *United States v. Carver*, 12 M.J. 581 (A.F.C.M.R.1981), the trial counsel asked the military judge to add the following sentence to the standard instructions on rape: "If a man engaged in sexual intercourse with a female whom he knows is unconscious, he is guilty of rape, because the act was done by force and without her consent." Although this is a correct statement of the law, the defense objected to this modification and the military judge gave the standard rape instruction instead, including the following language: "If the victim submitted to the act of sexual intercourse because she was unable to resist due to some mental or physical inability, then the act was done by force and without her consent." Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, ¶ 3–89 (1989). Appellant now contends it was error for the military judge not to give the instruction requested by the prosecution.

Before instructing the members, the military judge gave counsel written copies of the instructions and asked for objections. Ap-

pellant did not object to the rape instruction. Therefore, absent plain error, the objection was waived. As the defense specifically objected to the instruction they now claim should have been given after discussing it with the military judge on the record, and the military judge gave the instruction directly from the benchbook, we conclude no obvious or substantial error occurred. *See United States v. Strachan*, 35 M.J. 362, 364 (C.M.A.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1595, 123 L.Ed.2d 159 (1993).

#### B. Mistake of Fact Instruction

■ Appellant did not specifically ask the military judge to instruct on mistake of fact. He did request a modification to the instruction on proof of knowledge by circumstantial evidence,[1] tailored as follows:

> I have instructed you that you must be satisfied beyond reasonable doubt that the accused knew the alleged victim did not voluntarily consent to the intercourse or sodomy. This knowledge like any other fact, may be proved by circumstantial evidence. In deciding this issue you must consider all relevant facts and circumstances including but not limited to the level of intoxication of the purported victim and Staff Sergeant Everett, and the blackout or inability to remember by the alleged victim.

The military judge declined to give that instruction or to incorporate any of its language into his standard instructions on the credibility of witnesses. Appellant now asserts the military judge had a *sua sponte* duty to give the mistake of fact instruction.

■ When evidence adduced at trial reasonably raises a defense, the military judge must *sua sponte* deliver appropriate instructions regardless of the defense failure to so request. *United States v. Taylor*, 26 M.J. 127, 129 (C.M.A.1988). "The military judge's duty to instruct is not determined by the defense theory; he must instruct if the defense is raised." *United States v. McMonagle*, 38 M.J. 53, 58 (C.M.A.1993). Any doubt whether an instruction should be given " 'should be resolved in favor of the ac-

---

1. Department of the Army Pamphlet 27–9, *Military Judges' Benchbook*, ¶ 7–3, Note 3 (1982).

cused.'" *Id.* (quoting *United States v. Steinruck,* 11 M.J. 322, 324 (C.M.A.1981)).

Mistake of fact is a special defense which the military judge must describe to the court members *sua sponte* if reasonably raised by the evidence. R.C.M. 916(j), 920(e)(3); *Taylor,* 26 M.J. at 128–29. Mistake of fact is little more than a requirement that the prosecution prove beyond a reasonable doubt that an accused had the requisite intent or knowledge required by the statute. If the accused's knowledge or intent is immaterial to the statutory elements of the offense, then mistake is not a defense. R.C.M. 916(j).

An honest and reasonable mistake of fact as to the victim's consent is a defense to the charge of rape. *United States v. Baran,* 22 M.J. 265 (C.M.A.1986). Whether it is also a defense to sodomy is not as clear. Article 125 provides that any person subject to the UCMJ who engages in unnatural carnal copulation with another person is guilty of sodomy. Unlike rape, the statutory offense of sodomy does not contain any element requiring knowledge or intent. Therefore, mistake of fact is not a defense. *See United States v. Strode,* 39 M.J. 508 (A.F.C.M.R.1993).

The President does not have authority to establish rules of substantive military criminal law. *Ellis v. Jacob,* 26 M.J. 90, 92–93 (C.M.A.1988). However, pursuant to his authority to prescribe limitations on the maximum sentence a court-martial may adjudge (Article 56, UCMJ, 10 U.S.C. § 856 (1988)), the President has established a hierarchy of maximum sentence levels within the statutory offense of sodomy. *Cf. United States v. Lingenfelter,* 30 M.J. 302, 305 (C.M.A.1990). Thus, while the offense of sodomy may be punished by up to 5–years confinement, if the offense was aggravated because it was committed upon a child under the age of 16 years or by force and without consent, the maximum confinement escalates to 20 years. MCM, Part IV, ¶ 51e (1984). In order to take advantage of the increased punishments, the prosecution must plead and prove the aggravation beyond a reasonable doubt. *United States v. Lovell,* 7 U.S.C.M.A. 445, 22 C.M.R. 235, 237, 1956 WL 4761 (1956); *accord United States v. DiBello,* 17 M.J. 77, 79 (C.M.A.1983). As the government alleged the sodomy in this case was committed by force and without consent, it became an element of the offense. These words of aggravation are the very words which make the defense of mistake of fact available to an accused charged with rape. We hold they also make the defense available to an accused charged with forcible sodomy. If the defense is raised, however, it applies only to forcible sodomy and not to the lesser included offense of consensual sodomy.

Mistake of fact was not a defense theory of this case. From his opening statement, through cross-examination of witnesses, presentation of defense evidence, and closing argument, appellant focused on the acts being consensual, but under the fog of alcohol inebriation. On cross-examination, however, the trial counsel elicited from appellant some evidence from which the court members could conclude that appellant thought GM consented, even if she did not. Appellant testified that GM was not asleep, or at least he took it she was awake, because she verbally acknowledged his presence when he entered her bedroom. He stated that because GM spread her legs as he manipulated her vagina with his finger, appellant thought she was inviting him to have sex with her.

Although a military judge's instructions are not determined by the defense theory of the case, we are not unmindful of cases which suggest that the military judge should consider the defense theory before deciding to instruct on mistake of fact. *United States v. Peel,* 29 M.J. 235, 242 (C.M.A.1989), *cert. denied,* 493 U.S. 1025, 110 S.Ct. 731, 107 L.Ed.2d 750 (1990); *Taylor,* 26 M.J. at 131; *United States v. Carr,* 18 M.J. 297, 302 (C.M.A.1984); *United States v. Eck,* 28 M.J. 1046, 1048 (A.C.M.R.1989), *pet. denied,* 30 M.J. 29 (C.M.A.1990). Nevertheless, we are convinced that the prosecution cross-examination of appellant raised the "previously dormant issue of mistake of fact" as to rape and forcible sodomy and the military judge

had a duty to so instruct the court members.[2] *United States v. Daniels*, 28 M.J. 743 (A.F.C.M.R.1989) (court member's questions to prosecution expert concerning effect of alcohol and sleep on ability of victim to do and say things without later remembering them raised defense of mistake of fact as to rape). Failure to so instruct was prejudicial error.

### C. Lack of Voluntariness

██ At trial, appellant moved to suppress his confession of 27 December 1991, in which he admitted that GM was not aware she had engaged in sexual acts with him. The military judge denied the motion. When the prosecution called AFOSI Special Agent Burnett to lay a foundation for the presentation of the confession to the court members, the defense counsel requested an Article 39(a) session. In that session, appellant renewed his request to suppress the confession as involuntary and also claimed the confession was uncorroborated at least to the sodomy. The military judge ascertained that the prosecution's sole reason for calling the special agent was to lay a foundation for the presentation of the confession to the members. The defense declined to contest the foundation, but specifically asked to question Special Agent Burnett before the members concerning the voluntariness of the confession. The military judge ruled that voluntariness was a matter for the military judge, and appellant could not contest the voluntariness before the members; however, he told the defense they would be permitted to question the veracity of the confession. Since the defense declined to contest the foundation, the military judge ruled that it was unnecessary and the agent would not need to be called as a witness. The prosecution provided the confession to the court members without the testimony of Special Agent Burnett. During the defense case, appellant testified, *inter alia*, that his 27 December confession was a result of the AFOSI agents telling him that he was going to jail if he did not confess.

In rebuttal, the trial counsel called Special Agent Burnett to testify about the conditions under which appellant confessed. The defense counsel, in cross-examining Special Agent Burnett, was permitted to fully explore the circumstances under which appellant confessed, including the size of the room in which he was interrogated, the hours of interrogation, the investigative techniques employed, the number of breaks the agents permitted appellant, and the manner in which Special Agent Burnett asked questions, elicited answers, and actually typed out the confession. The military judge did not interfere in appellant's attempts to show the court members that the confession was unreliable.

The defense proposed that the military judge instruct the members on the voluntariness of the accused's confession substantially in accordance with the instruction contained in the military judge's benchbook. *See* Department of the Army Pamphlet 27–9, *Military Judge's Benchbook*, ¶ 4–2 (1982). If given, that instruction would have told the court members that the defense contested the voluntariness of the confession and that it was up to them to determine the weight and significance, if any, to give it. It also would have suggested certain evidence for the members to consider in weighing the confession. The military judge refused to give the instruction, but did give the court members the general instruction on credibility and an instruction concerning the evaluation of inconsistent statements.

██ Normally, the military judge has substantial discretion in deciding on the instructions to give. *United States v. Damatta–Olivera*, 37 M.J. 474, 478 (C.M.A.1993). However, denial of a defense-requested instruction is prejudicial error if (1) the charge is correct, (2) it is not substantially covered in the instructions given, and (3) " 'it is on such a vital point in the case that the failure to give it deprived defendant of a defense or seriously impaired its effective presenta-

---

2. Appellant judicially confessed to consensual sodomy. Therefore, the military judge could have instructed the members that if they were not convinced that appellant committed sodomy with GM by force and without her consent, or they believed appellant was acting under the mistaken belief that GM had consented, they should find him guilty of the lesser included offense of consensual sodomy.

tion.'" *Damatta–Olivera,* 37 M.J. at 478 (quoting *United States v. Winborn,* 14 U.S.C.M.A. 277, 282, 34 C.M.R. 57, 62, 1963 WL4756 (1963)); *United States v. Espronceda,* 36 M.J. 535, 539 (A.F.C.M.R.1992). A defense is in issue when there is some evidence to which the court members might attach credence if they so desire. *United States v. Watford,* 32 M.J. 176, 178 (C.M.A. 1991) (citing *United States v. Jackson,* 12 M.J. 163, 166–67 (C.M.A.1981)). This evidence need not be compelling. In evaluating the prejudicial impact of an error, we consider the error in the context of the instructions in their entirety. *United States v. Alford,* 31 M.J. 814, 818–19 (A.F.C.M.R.1990), *pet. denied,* 33 M.J. 198 (C.M.A.1991).

Mil.R.Evid. 304(e)(2) states:

If a statement is admitted into evidence, the military judge shall permit the defense to present relevant evidence with respect to the voluntariness of the statement and shall instruct the members to give such weight to the statement as it deserves under all the circumstances....

We have been unable to locate any case, decided since the adoption of the Military Rules of Evidence, which discusses the failure of the military judge to give a voluntariness instruction. The drafters of the Military Rules of Evidence do not comment on the origin of this rule; however, it clearly tracks the language contained in 18 U.S.C. § 3501(a) (1988).[3]

If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

The majority of federal courts have held that failure to provide a specific voluntariness instruction, where the question of voluntariness presents a genuine issue of fact, constitutes plain error which must be tested for prejudice. *United States v. McLernon,* 746 F.2d 1098 (6th Cir.1984);

*United States v. Bondurant,* 689 F.2d 1246 (5th Cir.1982); *United States v. Groce,* 682 F.2d 1359 (11th Cir.1982); *United States v. Maher,* 645 F.2d 780 (9th Cir.1981); *United States v. Fera,* 616 F.2d 590 (1st Cir.), *cert. denied,* 446 U.S. 969, 100 S.Ct. 2951, 64 L.Ed.2d 830 (1980); *United States v. Sauls,* 520 F.2d 568 (4th Cir .1975); *United States v. Barry,* 518 F.2d 342 (2d Cir.1975). The language contained in the general credibility and weighing evidence instruction is insufficient to comply with the statutory mandate, at least when the accused objects. *Sauls,* 520 F.2d at 570.

We find that the defense-requested instruction was a correct charge, and it was not substantially covered in the instructions that were given. Appellant's confession was crucial to the prosecution's case; without it, we doubt appellant's conviction could be sustained. Although Mil.R.Evid. 304(e)(2) is not a statutory mandate, we believe, when viewed in their entirety, the military judge's instructions failed to provide the court members sufficient notice that they could totally reject appellant's confession if they so desired. The voluntariness of appellant's confession was so vital to the defense that failure to give the instruction seriously impaired the effective presentation of his defense. Therefore, the failure to give the instruction was prejudicial error.

## IV. Conclusion

We find the military judge erred to appellant's prejudice by failing to give a mistake of fact instruction and by refusing to give an instruction on the voluntariness of the confession. Accordingly, the findings and sentence are set aside. A rehearing may be ordered.

Senior Judges SNYDER and RAICHLE concur.

---

**3.** Omnibus Crime Control and Safe Streets Act of 1968, Pub.L. No. 90–351, § 701(a), 82 Stat. 210 (1968).