# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM 38947**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Ryan D. MEANS**
Airman First Class (E-3), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 12 May 2017

————————————

*Military Judge:* Wendy L. Sherman (arraignment); James R. Dorman (trial).

*Approved sentence:* Bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1. Sentence adjudged 22 September 2015 by GCM convened at Minot Air Force Base, North Dakota.

*For Appellant:* Major Mark C. Bruegger, USAF; Major Jeffrey A. Davis, USAF.

*For Appellee:* Major Mary Ellen Payne, USAF; Major J. Ronald Steelman, III, USAF; Gerald R. Bruce, Esquire.

Before DREW, J. BROWN, and MINK, *Appellate Military Judges*.

Chief Judge DREW delivered the opinion of the Court, in which Senior Judge J. BROWN and Judge MINK joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

DREW, Chief Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a pretrial agreement (PTA) of divers wrongful use of heroin, alprazolam, oxycodone, and oxymorphone, and wrongful possession of cocaine, alprazolam, and clonazepam, in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a; incapacitation for duty due to wrongful previous overindulgence in drugs, in violation of Article 134, UCMJ, 10 U.S.C. § 934; and attempt to wrongfully possess fentanyl and psilocyn, in violation of Article 80, UCMJ, 10 U.S.C. § 880.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence.[2]

Appellant raises four assignments of error on appeal: (1) whether the trial counsel inappropriately argued that Appellant purposefully withheld evidence during the plea inquiry; (2) whether Appellant's sentence is unduly severe; (3) whether the Government violated Appellant's Fourth Amendment[3] rights by opening his mail without consent;[4] and (4) whether Appellant's

---

[1] In accordance with the PTA between Appellant and the convening authority, the latter dismissed a specification alleging wrongful distribution of alprazolam and a specification alleging an attempt to wrongfully possess a substance with the intent to alter mood or function. The military judge discussed the Government's requirement to dismiss the specifications, but trial counsel did not make a motion, nor did the military judge sua sponte dismiss the specifications. Nevertheless, the general court-martial order (CMO) correctly states that the specifications were dismissed pursuant to the PTA. Since the dismissals occurred after Appellant was arraigned on the specifications, the dismissals were with prejudice.

[2] The PTA provided that the convening authority would approve no confinement in excess of 16 months or a dishonorable discharge, but included no other limitations on the sentence he could approve. Accordingly, the PTA had no impact on the convening authority's ability to approve the adjudged sentence.

[3] U.S. CONST. amend. IV.

[4] Appellant raises this issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Appellant affirmatively waived the issue as part of his PTA discussion with the military judge, in which the military judge thoroughly discussed with Appellant his knowing waiver of a motion to suppress, on Fourth Amendment grounds, evidence that was seized from his mail and concluded with: "**MJ:** And, it is your desire to give up that motion to suppress for the sake of maintaining the pretrial agreement? **Appellant:** Yes, Your Honor." Ordinarily, appellate courts "do not review waived issues because a valid waiver leaves no error to correct on appeal." *United States v. Ahern*, __ M.J. __, No. 17-0032/AR, 2017 CAAF LEXIS 292, at *7 (C.A.A.F. 20 Apr. 2017) (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F.

*(Footnote continues on next page)*

solitary pretrial confinement constituted unlawful pretrial punishment.[5]

## I. BACKGROUND

In March 2015, Appellant snorted heroin in a parking lot of a bar in Minot, North Dakota. Shortly thereafter he was randomly selected for a urinalysis which tested positive for heroin metabolites. A subsequent *Bickel*[6] inspection tested positive for heroin metabolites and alprazolam metabolites, resulting from his additional snorting of heroin and wrongful ingestion of Xanax.[7]

In April 2015, Appellant wrongfully snorted oxymorphone and wrongfully ingested Xanax. Due to his Xanax consumption, Appellant reported for duty incapacitated on 15 April 2015. He was staggering, lethargic, slurring his speech, and nearly fell over. A urine sample he provided that day came back on 23 April 2015 and Appellant was placed in pretrial confinement. His wallet was later found in a supply closet at his duty section. His wallet contained various objects with cocaine residue.

On 30 April 2015, Appellant was released from pretrial confinement and restricted to base. While restricted, Appellant ordered contraband "magic mushrooms" and fentanyl without a prescription over the Internet.

On 18 May 2015, four envelopes belonging to Appellant were found in a fellow Airman's car. They contained approximately 80 Xanax pills. On the same day, Appellant consented to the search of his dorm room.[8] Various ob-

---

2009)). However, we recognize that this court is permitted, under Article 66(c), UCMJ, 10 U.S.C. § 866(c), to review issues affirmatively waived by an appellant at trial. *United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) ("CCAs are required to assess the entire record to determine whether to leave an accused's waiver intact, or to correct the error."). After having reviewed the entire record, we leave Appellant's waiver of this issue intact.

[5] Appellant raises this issue pursuant to *United States v. Grostefon.* Appellant affirmatively waived the issue as part of his PTA discussion with the military judge, in which the military judge thoroughly discussed with Appellant his knowing waiver of any unlawful pretrial punishment issue and concluded with: "**MJ:** Knowing what I have now told you, do you still desire to give up the right to litigate the issue of illegal pretrial punishment as long as your pretrial agreement continues to exist? **Appellant:** Yes, Your Honor." After having reviewed the entire record, we leave Appellant's waiver of this issue intact. *Chin*, 75 MJ at 223.

[6] *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990).

[7] Xanax is a commercial name for Alprazolam.

[8] A valid probable cause search authorization was also issued.

jects were seized, which tested positive for the presence of alprazolam and clonazepam. Appellant was placed back in pretrial confinement and his inspection urine sample tested positive for the metabolites of alprazolam.

On 19 May 2015, Appellant's fentanyl order arrived. Since Appellant was in pretrial confinement, officials opened and inspected the package for contraband. Inside the package were four time-release prescription fentanyl patches and a nose spray bottle, which, following a search authorization, were tested and determined to each contain fentanyl or an illicit chemical analog.

On 20 May 2015, Appellant's "magic mushroom" order arrived. Since Appellant was still in pretrial confinement, officials opened and inspected the package. Inside the package were six small bottles, which, following a search authorization, were tested and determined to contain psilocyn, a Schedule I controlled substance related to "magic mushrooms."

At the time of trial, Appellant remained in pretrial confinement.

## II. DISCUSSION

### A. Trial Counsel Sentencing Argument

The maximum punishment for Appellant's offenses was a dishonorable discharge, confinement for 31 years and three months, total forfeitures, and reduction to E-1. The assistant trial counsel argued for a sentence of a bad-conduct discharge, confinement for 18 months, total forfeitures, and reduction to E-1. Towards the beginning of his sentencing argument, which, including rebuttal argument, spanned ten pages in the record of trial, the assistant trial counsel made the following argument:

> A1C Means has pleaded guilty today. For the crimes he has pled guilty to he is facing 36 [sic] years of confinement and a dishonorable discharge. In making our sentencing request of 18 months and a bad-conduct discharge, the government acknowledges that A1C Means has taken some responsibility for his bad conduct. A1C Means had the opportunity today to take full responsibility; he did not. When asked by Your Honor repeatedly "how many times, how much," he couldn't remember. And not just that he couldn't remember, but that he couldn't remember when the answer was likely to be more than what he had to admit to.

Trial defense counsel did not object to the argument, but Appellant now asserts that assistant trial counsel's argument that Appellant failed to take full responsibility during his providence inquiry was error.

"Improper argument involves a question of law that [we] review[ ] de novo." *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014). "The legal test for improper argument is whether the argument was erroneous and whether it materially prejudiced the substantial rights of the accused." *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000). Error occurs when counsel fail to limit their arguments to "the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Id.* "However, as a threshold matter, the argument by a trial counsel must be viewed within the context of the entire court-martial. The focus of our inquiry should not be on words in isolation, but on the argument as 'viewed in context.'" *United States v. Baer*, 53 M.J. 235, 238 (C.A.A.F. 2000) (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). Even within the context of the record, it is error for trial counsel to make arguments that "unduly . . . inflame the passions or prejudices of the court members." *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (alteration in original) (quoting *United States v. Schroder*, 65 M.J. 49, 58 (C.A.A.F. 2007)). On the other hand, trial counsel is expected to zealously argue for an appropriate sentence, so long as the argument is fair and reasonably based on the evidence. *United States v. Kropf*, 39 M.J. 107, 108 (C.M.A. 1994).

Where improper sentencing argument occurs, we must determine whether we can be confident that the appellant was sentenced on the basis of the evidence alone. *United States v. Halpin*, 71 M.J. 477, 480 (C.A.A.F. 2013). When trial defense counsel failed to object to an argument at trial, we review for plain error. *Marsh*, 70 M.J. at 104. To establish plain error, Appellant must prove (1) there was error, (2) it was plain or obvious, and (3) the error resulted in material prejudice. *United States v. Flores*, 69 M.J. 366, 369 (C.A.A.F. 2011).

Argument by trial counsel that comments upon an accused's right to remain silent is "beyond the bounds of fair comment." *United States v. Paxton*, 64 M.J. 484, 487 (C.A.A.F. 2007). However, if the proper foundation is laid, an accused's refusal to admit guilt or accept responsibility may be an appropriate factor for the members' consideration in their sentencing deliberation on rehabilitation potential. *United States v. Garren*, 53 M.J. 142, 144 (C.A.A.F. 2000); *United States v. Edwards*, 35 M.J. 351, 355 (C.M.A. 1992). "As a general rule, the predicate foundation is that an accused has either testified or has made an unsworn statement and has either expressed no remorse or his expression of remorse can be arguably construed as being shallow, artificial, or contrived." *Edwards*, 35 M.J. at 355. "Other evidence in the record may also give rise to the inference that an accused is not remorseful, but the inference may not be drawn from his decision not to testify or from his pleas of not guilty." *Paxton*, 64 M.J. at 487 (citing *Edwards*, 35 M.J. at 355). An accused's "sworn admissions made during a providence inquiry can

5

be admissible for sentencing purposes as aggravating evidence." *United States v. Price*, 76 M.J. 136, __, 2017 CCA LEXIS 265, *7 (C.A.A.F. 2017) (citing *United States v. Holt*, 27 M.J. 57, 60 (C.M.A. 1988)).

Here, assistant trial counsel argued that Appellant minimized his culpability during his providence inquiry. Trial counsel may properly refer to Appellant's sworn providence inquiry testimony during sentencing argument. *Holt*, 27 M.J. at 60. Whether Appellant's asserted memory lapses resulted from a refusal to accept responsibility, or from the passage of time—possibly aided by the ingestion of illicit drugs—is a matter for debate. However, just as trial defense counsel did not see fit to object that the argument misstated the evidence or was otherwise improper, we do not believe that any error that may have existed was plain or obvious. In any event, we are convinced that Appellant was not prejudiced by the argument.

This was a judge alone trial. We are convinced that the military judge was not unduly swayed by assistant trial counsel's fleeting comment, and we are confident that Appellant was sentenced on the basis of the evidence alone.

## B. Sentence Severity

This court "may affirm only . . . the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." Article 66(c), UCMJ, 10 U.S.C. § 866(c). This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). This task requires "individualized consideration of the particular accused on the basis of the nature and seriousness of the offense and the character of the offender." *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)) (internal quotation marks omitted).

In conducting this review, we must also be sensitive to considerations of uniformity and evenhandedness. *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (citing *United States v. Lacy*, 50 M.J. 286, 287–88 (C.A.A.F. 1999)). However, we engage in sentence comparison only "in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases." *Id.* (quoting *United States v. Dukes*, 5 M.J., 71, 73 (C.M.A. 1978)).

> An appellant who asks the Court of Criminal Appeals to engage in sentence comparison bears the burden of demonstrating that any cited cases are "closely related" to the appellant's

case, and that the sentences are "highly disparate." If the appellant meets that burden . . . the burden shifts to the Government to show a rational basis for the disparity.

*Id.* (quoting *Lacy*, 50 M.J. at 288). Sentence comparison is appropriately rare since "[f]rom the mere face of court-martial promulgating orders or similar documents, it is simply not possible to assess the multitude of aggravating and mitigating sentencing factors considered in the cases they represent." *United States v. Ballard*, 20 M.J. 282, 285 (C.M.A. 1985). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

Appellant's conviction for multiple drug offenses involving a wide range of controlled substances carried a maximum punishment of a dishonorable discharge, confinement for 31 years and three months, total forfeitures, and reduction to E-1. Appellant negotiated with the convening authority not to approve a dishonorable discharge or confinement in excess of 16 months, neither of which were implicated by Appellant's sentence of a bad-conduct discharge, confinement for 15 months, forfeiture of all pay and allowances, and reduction to E-1. Appellant has referred the court to a number of other drug cases. However, Appellant has failed to meet his burden to establish that any of those cases are closely related to his.

We have given individualized consideration to Appellant, the nature and seriousness of his offenses, his record of service, and all other matters contained in the record of trial. We find that the approved sentence was legally appropriate based on the facts and circumstances of this particular case, and was not inappropriately severe.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.[9]

FOR THE COURT

KURT J. BRUBAKER
Clerk of the Court

---

[9] We note that the CMO incorrectly states the plea and finding for Charge I, Specification 5. We direct a corrected CMO reflecting the following: "Plea: NG, but G of the LIO of wrongful possession of a controlled substance. Finding: G of the LIO of wrongful possession of a controlled substance. Greater offense dismissed in accordance with the PTA."